Charles A. Loreto, J.
In this automobile accident case the negligence of the defendants is conceded. The property damage sustained by the plaintiffs in the sum of $425 is also conceded. The question left open for determination by the court, a jury having been waived, is the nature of the personal injuries sustained by the decedent resulting from the automobile contact. The principal injury claimed is an aggravation of a pre-existing cancer.
The evidence establishes that on February 25, 1955 the defendant Ashby while operating an automobile owned by the codefendant King, drove it into the decedent’s automobile. At that time defendant Ashby was in an intoxicated condition. *79 The decedent was the operator of this automobile and the impact caused his abdomen to strike the steering wheel. He complained of pain in the region of the abdomen.
The evidence also indicates that several months prior to this incident it was apparent that the decedent was the victim of a right inguinal lymphosarcoma. Two days after the automobile accident when he complained of pain in that area of his body, his family physician discovered a mass in the lower right quadrant of his abdomen. When referred to a specialist in radiology, who examined him one week later, that mass was observed by the radiologist. Notwithstanding radium treatment his condition worsened rapidly and he died on June 12, 1955.
The plaintiffs offered the testimony of two medical witnesses. The first was the family physician. He concededly lacked a background of experience in the diagnosis and treatment of cancer. However he readily answered the hypothetical question put to him to the effect that in his opinion the trauma was the proximate cause aggravating the pre-existing cancer. The second medical witness who testified on behalf of the plaintiffs specialized in radiology and treated cancer cases. He too expressed the same opinion as to aggravation in answer to a hypothetical question. He also testified that in his opinion the injury caused the swelling which he found in the lower right abdomen of the deceased. Both these witnesses stated that the life expectancy of a person with this disease is from two to five years.
The defendant offered the testimony of one expert medical witness, a. Dr. William J. Hoffman of New York City, who is a surgeon and radiologist specializing and limiting his practice io the diagnosis, treatment and surgery of cancer cases. Contrary to the opinion expressed by the two medical witnesses on behalf of the plaintiffs, he testified that in his opinion the trauma did not aggravate the pre-existing cancer, nor accelerate the time of death of the deceased.
He based his opinion upon the detailed explanation of the origin and progress of this disease to the effect that lymphosarcoma is a special form of cancer; that it is composed of cells of the lymphocyte series which are one of the varieties of white blood cells in the blood and the cancer indicated by the sarcoma arises in the connective tissue or the blood forming tissue as distinguished from tissue used to cover the body or to line its cavities; that there are two main subdivisions of cancer; carcinoma, the kind that occurs in the skin or lining of the mouth, stomach, bowel or in glands that secrete chemicals, and *80 sarcoma which includes everything else, the bone, the cartilage, the ligaments of the body and the blood itself; that the lymphocyte normally occurs in the blood and is also found in considerable aggregations in special organs called lymph glands or lymph nodes and that when the cancer arises in the cell of those structures it is likely to be a lymphosarcoma; that it begins with the malignant change in a single cell as every form of cancer which escapes from the normal restraint of the body, obeying no laws and being completely out of control, multiplies at its own particular rate influenced by certain hormones in the body until it has spread through the whole body in the blood stream.
Except for a very rare case, Dr. Hoffman expressed the opinion that lymphosarcoma is usually hopeless and 100% fatal and that a patient with this disease would have a life expectancy of about one year. He stated that although a survey of such cases made in various hospitals shows that the average duration of life is estimated at two years, in his opinion that is inaccurate because those surveys are not based upon when the lympho starts, which is unknown, but from the time when it is discovered.
Dr. Hoffman further testified that a common finding in lymphosarcoma that has been roughly handled is to find areas of hemorrhage and necrosis throughout the lymphosarcoma; that lymphosarcoma consists of globules of living material which have a consistency of jelly enclosed in an extremely thin envelope so that any pressure great enough to rupture the envelope will kill that cell and that the effect of a blow is to reduce the cell population by direct destruction of the cells and to suppress the further replacement of those cancer cells by living cells and thus retard the growth rate. He testified “ that where there has been a rupture of a cancer, there is a hemorrhage which forms a clot, and that clot seals off the broken blood vessels, and the bleeding stops, and the lymphatics are similarly sealed off by the clot, and there results then an interference with circulation.
“ So that blood can enter the cancer very easily but it does not get out so well. And so the whole area becomes greatly swollen up, because of increasing pressures within it. Now, that increasing pressure kills a great deal of the cancer for two reasons. First, the cancer lacks the normal blood supply, because the blood trapped within it quickly loses its oxygen and then the cancer cells die of asphyxiation. You have got to have a constant bringing in of fresh blood ’ \
*81 Dr. Hoffman pointed out the great importance of the lymphocyte cell in offering the resistance of the human body against cancer. He testified that this cell is a defense organ provided by nature in the body against cancer and that lymphosarcoma has its peculiar fatal quality because of its very existence and that a person who develops this form of cancer loses his last defense, leaving him nothing with which to combat the disease. For that reason it is considered deadly.
The hospital records of the deceased indicated the existence of this disease in his groins and in his neck. Dr. Hoffman testified that the lymphatic system of his body was therefore involved from one end to the other prior to the accident, which is normal and natural in lymphosarcoma. He further testified that, although it was reported the decedent died of leukemia, his primary disease began and remained as sarcoma, and that the large numbers of white cells found in his blood at the time of his death justified the diagnosis of myeloid leukemia; that coincident with his complete loss of resistance to the disease the cells flooded to the blood stream excluding all other normal cells almost entirely presenting the picture of leukemia. He concluded that the accident did not affect the life of the deceased.
On the evidence in this case the court finds that plaintiffs have failed to sustain the burden of proof to establish an aggravation of pre-existing lymphosarcoma. The experience, training and background of Dr. Hoffman in his specialty impel the acceptance of his testimony on this subject over that of the plaintiffs’ medical witnesses.
However, the court finds that the accident caused the decedent to suffer internal hemorrhaging and bleeding. The radiologist who testified on behalf of the plaintiffs ascribed the swelling to the hemorrhaging. Dr. Hoffman agreed that there would be a swelling following a blow.
It should be noted that, although he testified to the fact that trauma to a cancer retards its growth, the medical profession has not adopted this as a method for its treatment. This therefore should be a factor to be considered as well as pain and suffering, which is attributable to the effects of the trauma, divorced from the cancer. In a case such as this, where the injured person is not available to testify due to his death, the court is permitted to indulge in that respect in reasonable inferences that may be drawn from the evidence. No scientific measure has yet been found for the assessment of the value of pain and suffering. It has been said that, because of the imponderables and uncertainties, reducing this to a monetary *82 valuation is a matter best left for a jury to determine, and, where a jury has been waived, the court must act in the capacity of such a body of men, drawn from all walks of life, to fix what in its sound judgment it concludes a jury would find.
Upon these considerations the court decides that the sum of $3,500 should be awarded for the injuries suffered by the deceased and the further sum of $425 should be awarded for property damage. Judgment may be entered accordingly. Twenty days ’ stay of execution is granted.